[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12344

_____

D.C. Docket No. 9:17-cv-80393-RLR

CHARLES T. JOHNSON,
on behalf of himself and others
similarly situated,

Plaintiff-Appellee,

JENNA DICKENSON,

Interested Party - Appellant,

versus

NPAS SOLUTIONS, LLC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 17, 2020)

Before MARTIN, NEWSOM, and BALDOCK,* Circuit Judges.

NEWSOM, Circuit Judge:

The class-action settlement that underlies this appeal is just like so many others that have come before it.  And in a way, that's exactly the problem.  We find that, in approving the settlement here, the district court repeated several errors that, while clear to us, have become commonplace in everyday class-action practice.

First, the district court set a schedule that required class members to file any objection to the settlement—including any objection pertaining to attorneys' fees—more than two weeks before class counsel had filed their fee petition.  In so doing, we hold, the court violated the plain terms of Federal Rule of Civil Procedure 23(h).

Second, in approving the settlement, the district court awarded the class representative a $6,000 "[i]ncentive [p]ayment," as "acknowledgment of his role in prosecuting th[e] case on behalf of the [c]lass [m]embers."  In so doing, we conclude, the court ignored on-point Supreme Court precedent prohibiting such awards.

Finally, in approving class counsel's fee request, overruling objections, and approving the parties' settlement, the district court made no findings or

---

* Honorable Bobby R. Baldock, United States Circuit Judge for the Tenth Circuit, sitting by designation.

conclusions that might facilitate appellate review; instead, it offered only rote, boilerplate pronouncements ("approved," "overruled," etc.).  In so doing, we hold that the court violated the Federal Rules of Civil Procedure and our precedents requiring courts to explain their class-related decisions.

We don't necessarily fault the district court—it handled the class-action settlement here in pretty much exactly the same way that hundreds of courts before it have handled similar settlements.  But familiarity breeds inattention, and it falls to us to correct the errors in the case before us.  We will reverse in part, vacate in part, and remand for further proceedings.

**I**

This case began in March 2017, when Charles Johnson—on behalf of both himself and a putative class of similarly situated individuals—sued NPAS Solutions, LLC in the U.S. District Court for the Southern District of Florida, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227.  As relevant here, the TCPA makes it unlawful to "us[e] any automatic telephone dialing system" to call a person without his or her "prior express consent," *id.* § 227(b)(1)(A); it also provides for statutory damages of "$500 . . . for each . . . violation" and authorizes up to treble damages against anyone who "willfully or knowingly violate[s]" the law, *id.* § 227(b)(3).  Johnson claimed that NPAS—an entity that collects medical debts—had used an automatic telephone-

3

dialing system to call his cell phone without his consent.  In particular, Johnson challenged NPAS' practice of calling "wrong number[s]"—*i.e.*, phone numbers that had originally belonged to consenting debtors but had been reassigned to non-consenting persons.

The case quickly proceeded to the settlement phase.  After some preliminary discovery and motions practice, the parties jointly filed a notice of settlement on November 2—less than eight months after Johnson had filed suit.  Not long thereafter, Johnson moved to certify the class for settlement purposes; he argued that settlement was in the class members' best interest because, despite NPAS's possible defenses, he had obtained a meaningful recovery of $1,432,000.

On December 4, the district court preliminarily approved the settlement and certified the class for settlement purposes.[1]  The court appointed Johnson as the class representative and his lawyers as class counsel, and its order stated that Johnson could "petition the Court to receive an amount not to exceed $6,000 as acknowledgment of his role in prosecuting this case on behalf of the class members."  The district court set March 19, 2018 as the deadline for class members to opt out of the settlement and, more importantly for our purposes, to

---

[1] The defined class comprised "[a]ll persons in the United States who (a) received calls from NPAS Solutions, LLC between March 28, 2013 and [December 4, 2017] that (b) were directed to a phone number assigned to a cellular telephone service, (c) for which NPAS Solutions' records contain a 'WN' designation, and (d) were placed using an automatic telephone dialing system." NPAS acknowledged that 179,642 phone numbers fell within that class.

file objections to the settlement. The court set April 6, 2018—18 days after the opt-out/objection deadline—as the date by which Johnson and NPAS had to submit their motion for final approval of the settlement and their responses to objections, and (more importantly) by which class counsel had to submit their petition for attorneys' fees and costs.

The following month, class members were notified about the settlement and informed that NPAS would establish a settlement fund, that class counsel would seek attorneys' fees amounting to 30% of the fund, and that Johnson would seek a $6,000 incentive award from the fund. In total, 9,543 class members submitted claims for recovery.

When the objection deadline of March 19 arrived, no class member opted out, and only one objected to the settlement—Jenna Dickenson, our appellant. As a procedural matter, Dickenson challenged the district court's decision to set the objection deadline before the deadline for class counsel to file their attorneys'-fee petition, which she contended violated Federal Rule of Civil Procedure 23 and the Due Process Clause. On the merits, Dickenson (1) objected to the amount of the settlement, arguing that it should have been higher; (2) argued that the court should conduct a lodestar calculation in determining reasonable attorneys' fees; and (3) contended that Johnson's $6,000 incentive award both contravened the Supreme Court's decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and

5

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), and created a conflict of interest between Johnson and other class members.

On the parties' April 6 filing deadline, Johnson and NPAS opposed Dickenson's objection and urged the district court to approve the settlement as fair, reasonable and adequate. Johnson also filed a motion for final approval of the settlement and requested attorneys' fees, costs and expenses of the litigation, as well as an incentive award, all of which he said were reasonable and in line with the amounts approved in similar settlements.

About a month later, the district court held a final fairness hearing. After class counsel, NPAS, and Dickenson had presented their arguments, the district court announced its intention to approve the settlement. The court explained that it "ha[d] carefully considered all of the submissions before the Court," including Dickenson's objection. The court stated that it was "going to overrule that objection, but nevertheless appreciate[d] the argument [Dickenson's] counsel ha[d] made."

The same day, the district court entered a brief, seven-page order approving the settlement. The court's evaluation of the fairness of the settlement consisted of the following sentence:

> The Court finds that the settlement of this action, on the terms and conditions set forth in the Settlement Agreement, is in all respects fundamentally fair, reasonable, adequate, and in the best interest of the class members, when considering, in their totality, the following

factors: (1) the absence of any fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the Plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

Dist. Ct. Order at 4 (citing *Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1527, 1530 (11th Cir. 1994)).

The order specified that NPAS would create a non-reversionary $1,432,000 settlement fund, from which the following would be deducted before class members received any payout: (1) costs and expenses disbursed in administering the settlement and providing notice to the class; (2) attorneys' fees in the amount of 30% of the fund (or $429,600), as well as $3,475.52 for class counsel's litigation costs and expenses; and (3) a $6,000 "[i]ncentive [p]ayment" to Johnson, "as acknowledgment of his role in prosecuting this case on behalf of the [c]lass [m]embers." *Id.* at 5. After subtracting out those deductions, each of the potential 179,642 class members stood to receive only $7.97. (Happily, because only 9,543 class members submitted claims, each stands to receive a whopping $79.) The district court's order provided no analysis to accompany its approval of the attorneys'-fee percentage or the incentive award. The order also stated, without further explanation, that "[t]he objection of Jenna Dickenson is OVERRULED." *Id.*

7

This is Dickenson's appeal.

## II

Dickenson raises several challenges—three, as we categorize them—to the district court's approval of the settlement.  First, she contends that the district court erred when it required class members to file objections to the settlement—including to attorneys' fees—before class counsel had filed their fee petition.  Second, she insists that the district court's approval of Johnson's $6,000 incentive award contravenes Supreme Court precedent.  Finally, and more broadly, she maintains that the district court didn't provide sufficient explanation to enable meaningful appellate review—either in awarding attorneys' fees, in overruling her objections, or in determining that the settlement was fair.  We consider Dickenson's arguments in turn.[2]

## A

### 1

Dickenson's first challenge is procedural.  In its order preliminarily

---

[2] "In reviewing the validity of a class action settlement, a district court's decision will be overturned only upon a clear showing of abuse of discretion." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  A district court's decision to award attorneys' fees is also reviewed for abuse of discretion, although "that standard of review allows us to closely scrutinize questions of law decided by the district court in reaching the fee award." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 770 (11th Cir. 1991).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in [reaching its decision], or makes findings of fact that are clearly erroneous." *Fitzpatrick v. Gen. Mills, Inc.*, 635 F.3d 1279, 1282 (11th Cir. 2011) (alteration in original) (quotation omitted).

approving the settlement, certifying the class, and establishing a schedule, the

district court required class members to file any objection to the settlement—

including any objection pertaining to attorneys' fees—by March 19, 2018.  In the

same order, the district court gave class counsel until April 6 to file their fee

petition—eighteen days *after* class members' objections were due.  Dickenson

contends that by ordering the deadlines in this manner, the district court inhibited

her from objecting to the fee request, in violation of Federal Rule of Civil

Procedure 23(h) and the Due Process Clause.  As relevant here, Rule 23(h)

provides as follows:

> In a certified class action, the court may award reasonable attorney's
> fees and nontaxable costs that are authorized by law or by the parties'
> agreement.  The following procedures apply:
>
>> (1) A claim for an award must be made by motion . . . at a time
>> the court sets.  Notice of the motion must be served on all
>> parties and, for motions by class counsel, directed to class
>> members in a reasonable manner.
>
>> (2) A class member, or a party from whom payment is sought,
>> may object to the motion.

Fed. R. Civ. P. 23(h).[3]

    We hold that Rule 23(h)'s plain language requires a district court to

sequence filings such that class counsel file and serve their attorneys'-fee motion

---

[3] While we generally review a district court's approval of a settlement for abuse of discretion,
"[i]nterpreting the Federal Rules of Civil Procedure presents a question of law subject to *de novo*
review." *Burns v. Lawther*, 53 F.3d 1237, 1240 (11th Cir. 1995).

*before* any objection pertaining to fees is due.  By its terms, the Rule not only authorizes attorneys'-fee awards but also goes on to specify that "[n]otice" of any attorneys'-fee motion must be "directed to class members in a reasonable manner," and then to state that a class member may "object *to the motion*."  *Id.* (emphasis added).  As one treatise has explained, "[t]he logical extension of the class members' right to object to class counsel's fee request is that the fee petition itself must be filed prior to the class members' objection deadline, particularly given the ease with which the petition papers can be made available to the class."  William B. Rubenstein, 5 *Newberg on Class Actions* § 15:13 (5th ed. 2020).

Johnson asks us to disregard Rule 23(h)'s clear terms.  He says that class members were adequately informed by the class *notice*, which preceded the objection deadline and which stated that class counsel planned to seek a 30% fee.  But "[t]he plain text of the rule requires that any class member be allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed."  *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010); *see also* Fed. R. Civ. P. 23(h)(2), Advisory Committee Note to 2003 Amendment ("In setting the date objections are due, the

10

court should provide sufficient time *after the full fee motion is on file* to enable potential objectors to examine the motion." (emphasis added)).[4]

Reading Rule 23(h) in accordance with its plain text also happens to make good practical sense in at least two respects. First, it ensures that class members have full information when considering—and, should they choose to do so, objecting to—a fee request. While class members may learn from a class notice the all-in amount that counsel plan to request, they would be "handicapped in objecting" based on the notice alone because only the later-filed fee *motion* will include "the details of class counsel's hours and expenses" and "the rationale . . . offered for the fee request." *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014); *see also Mercury*, 618 F.3d at 994 ("Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members."); *Keil v. Lopez*, 862 F.3d 685, 705 (8th Cir. 2017) (raising similar concerns).

Second, a plain-language reading of Rule 23(h) ensures that the district court is presented with a fee petition that has been tested by the adversarial process. While, in theory, class counsel act as fiduciaries for the class as a whole, once a

---

[4] *See Horenkamp v. Van Winkle and Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (explaining that, while "not binding," Advisory Committee Notes "are nearly universally accorded great weight in interpreting federal rules" (quotation omitted)).

11

class action reaches the fee-setting stage, "plaintiffs' counsel's understandable interest in getting paid the most for its work representing the class" comes into conflict "with the class' interest in securing the largest possible recovery for its members." *Mercury*, 618 F.3d at 994. Accordingly, "the district court must assume the role of fiduciary for the class plaintiffs" and "ensure that the class is afforded the opportunity to represent its own best interests." *Id.* (quotation omitted). The district court cannot properly play its fiduciary role unless—as in litigation generally—class counsel's fee petition has been fully and fairly vetted.

For all these reasons, we have no difficulty concluding that by requiring class members to object to an award of attorneys' fees before class counsel had filed their fee petition, the district court violated Rule 23(h).[5]

---

[5] In so holding, we have plenty of company. At least three other circuits have reached this conclusion explicitly, *see, e.g.*, *Keil*, 862 F.3d at 705 (holding "that the district court erred by setting the deadline for objections on a date before the deadline for class counsel to file their fee motion"); *Redman*, 768 F.3d at 637–38 (holding that class counsel's filing of an attorneys'-fee motion "after the deadline set by the court for objections to the settlement had expired" violated Rule 23(h) and stating that "[t]here was no excuse for permitting so irregular, indeed unlawful, a procedure"); *Mercury*, 618 F.3d at 993 ("We hold that the district court abused its discretion when it erred as a matter of law by misapplying Rule 23(h) in setting the objection deadline for class members on a date before the deadline for lead counsel to file their fee motion."), and at least one has suggested as much in dicta, *see In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016), *as amended* (May 2, 2016) (stating that the court "ha[d] little trouble agreeing that Rule 23(h) is violated in th[e] circumstances" presented in *Redman* and *Mercury*).

**2**

The more difficult question is whether, in the circumstances of this case, the district court's Rule 23(h) error was harmless. Unsurprisingly, the parties disagree. Johnson contends that class members were advised in the class notice that counsel would seek a 30% award and, further, that Dickenson wasn't totally prevented from objecting—not only did she submit written objections before the fee petition was filed, but she also presented oral objections afterwards, at the fairness hearing. For her part, Dickenson responds that the error can't be deemed harmless because the district court didn't allow for supplemental briefing after the Rule 23(h) violation was brought to its attention, "gave no serious consideration to the objections that [she] filed," and further, that "other unnamed class members" might have offered "additional cogent arguments that [she] did not." Reply Br. of Appellant at 5–6.

Although we haven't yet applied the harmless-error doctrine to a Rule 23(h) violation, at least one other circuit has. In *Keil*, the Eighth Circuit held that a similar Rule 23(h) error was harmless because "there [wa]s no reasonable probability that it affected the outcome of the proceeding"—in particular, it said, "even if class members had an opportunity to object to the fee motion, there [wa]s no reasonable probability that their objections would have resulted in the court awarding a lower fee." 862 F.3d at 705–06. The court explained that the objectors

13

"had an ample opportunity on appeal to respond to the specific arguments contained within class counsel's fee motion" and "[d]espite raising a number of objections, none of their arguments [were] meritorious." *Id.* at 705.

The *Keil* court's analysis mirrors how we ordinarily conduct harmless-error review—that is, by asking whether the complaining party's substantial rights have been affected. *See, e.g.*, *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 979 (11th Cir. 2016) (explaining that "the challenging party must establish that the error affected substantial rights to obtain reversal and a new trial"); *see also* 28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").[6]  We have explained that errors "affect a substantial right of a party if they have a 'substantial influence' on the outcome of a case or leave 'grave doubt' as to whether they affected the outcome of a case." *United States v. Frazier*, 387 F.3d 1244, 1266 n.20 (11th Cir.

---

[6] Additionally, Federal Rule of Civil Procedure 61 states: "Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."  Although Rule 61 "in a narrow sense . . . applies only to the district courts, it is well-settled that the appellate courts should act in accordance with the salutary policy embodied in Rule 61." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (citation omitted); *see also id.* (explaining that "Congress has further reinforced the application of Rule 61 by enacting the harmless error statute, 28 U.S.C. § 2111, which applies directly to appellate courts and which incorporates the same principle as that found in Rule 61").

14

2004) (en banc) (quoting *Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946)).

In a similar context, we have held that if a district court's misapplication of a Federal Rule doesn't deny a party the opportunity to present arguments that would have changed the outcome, the error is harmless. In *Restigouche, Inc. v. Town of Jupiter*, we considered a district court's potential violation of Federal Rule of Civil Procedure 56(c), which at the time required that "the non-moving party must be given 10-day advance notice that a summary judgment motion will be taken under advisement." 59 F.3d 1208, 1213 (11th Cir. 1995). We emphasized, though, that the non-moving party there "had ample opportunity to marshal facts and arguments, and d[id] not assert on appeal that there exist[ed] additional evidence . . . which would create material issues of fact." *Id.* "Because [the non-moving party] ha[d] not been deprived of the opportunity to present facts or arguments which would have precluded summary judgment," we held that "any violation of the 10-day notice rule [wa]s harmless." *Id.*

For similar reasons, we conclude that although the district court here violated Rule 23(h), its error was harmless. While a Rule 23(h) error can undoubtedly "handicap[]" class members who oppose an attorneys'-fee award— because, without the fee petition itself, they lack the requisite information to formulate a compelling objection, *see Redman*, 768 F.3d at 638—it doesn't appear

15

that such harm materialized here.  Before class counsel filed their fee petition, Dickenson lodged a detailed objection to the attorneys'-fee award, challenging it on several grounds, including (1) that the district court should conduct a lodestar analysis and (2) that Johnson's incentive award was prohibited by law and otherwise excessive.  Then, at the fairness hearing—having had an opportunity to review the fee petition—Dickenson's counsel reiterated her objection but didn't raise any new arguments.  Even now, on appeal—with the benefit of time to consider the fee petition even more carefully—Dickenson's objections remain essentially the same.  Given the consistency of Dickenson's position in response to class counsel's attorneys'-fee request—both before and after receipt of their fee petition—we can't see how she was "deprived of the opportunity to present" additional objections.  *Restigouche*, 59 F.3d at 1213; *cf. Shinseki v. Sanders*, 556 U.S. 396, 413 (2009) (holding that a "notice error" was harmless because the respondent "ha[d] not explained to the Veterans Court, to the Federal Circuit, or to us how the notice error to which he points could have made any difference"); Rubenstein, *supra*, § 15:13 (stating that "failure to comply with fee notice procedures does not automatically require reversal" and that "[a]bsent some prejudice to the objectors, notice failure is considered harmless error and generally excused").

16

To be sure, Dickenson argues that "[s]he had no way of knowing what rationale or record class counsel would offer as a basis for their motion, let alone any way to frame an objection responsive to their application." Br. of Appellant at 24. The problem, it seems to us, is that by the time of the fairness hearing—let alone proceedings in this Court—she knew exactly class counsel's "rationale [and] record," and yet she hasn't offered any new arguments in opposition to their fee request. Because Dickenson makes essentially the same arguments before us that she did when filing her written pre-petition objection, we cannot conclude that the district court's procedural error was harmful—*i.e.*, that it "affected the outcome of the proceeding." *Keil*, 862 F.3d at 705.[7]

**B**

Dickenson next challenges the district court's approval of a $6,000 "[i]ncentive [p]ayment" to Johnson as the class representative. She contends that

---

[7] Dickenson separately argues that the district court's actions in setting the deadlines violated her due-process rights. We can't imagine (and Dickenson hasn't explained) how the Due Process Clause would be any more protective of her right to be heard than our interpretation of Rule 23. In any event, we needn't address the precise interaction between Rule 23 and due-process requirements here because there was no due-process violation. "Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). Under the circumstances presented here, the notice provided to class members—although insufficient to satisfy Rule 23(h)—informed class members the percentage of the fund that class counsel would seek and, in fact, enabled Dickenson to file an objection. Although Dickenson wasn't given the opportunity to submit another *written* filing after class counsel filed their fee petition, her lawyer appeared at the fairness hearing and presented her objections to the settlement and fee request. It seems to us that Dickenson received the baseline notice and opportunity to be heard that due process requires.

17

the Supreme Court's decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and

*Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116 (1885), prohibit incentive

awards like Johnson's and, more generally, that the award creates a conflict of

interest between Johnson and the other class members.  In short, we agree with

Dickenson that Supreme Court precedent prohibits incentive awards like the one

earmarked for Johnson here.  To explain why, we will (1) review *Greenough* and

*Pettus*, (2) demonstrate their application to modern-day incentive awards, and

(3) respond to Johnson's counterarguments.

**1**

*Greenough* and *Pettus* are the seminal cases establishing the rule—

applicable in so many class-action cases, including this one—that attorneys' fees

can be paid from a "common fund."  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S.

472, 478 (1980) ("Since the decisions in [*Greenough*] and [*Pettus*], this Court has

recognized consistently that a litigant or a lawyer who recovers a common fund for

the benefit of persons other than himself or his client is entitled to a reasonable

attorney's fee from the fund as a whole.").  Importantly for our purposes,

*Greenough* and *Pettus* also establish limits on the types of awards that attorneys

and litigants may recover from the fund.  Because of their significance to our

decision—and because they seem to have been largely overlooked in modern class-

action practice—we will explain the cases in some detail.

First, and most importantly, *Greenough*.  In that case, Francis Vose, who held bonds of the Florida Railroad Company, sued the trustees of the Internal Improvement Fund of Florida (and others) on behalf of himself and other bondholders.  *Greenough*, 105 U.S. at 528.  Vose argued "that the trustees were wasting and destroying the fund by selling at nominal prices" land that had been earmarked to service the bonds that he and the other bondholders held.  *Id.* at 528–29.  He was successful.  After "[t]he litigation was carried on with great vigor and at much expense, . . . a large amount of the trust fund was secured and saved."  *Id.* at 529.  As a result, "a considerable amount of money was realized, and dividends [were] made amongst the bondholders, most of whom came in and took the benefit of the litigation."  *Id.*  Vose "bore the whole burden of this litigation" himself, and he "advanced most of the expenses which were necessary for the purpose of rendering it effective and successful."  *Id.*  Accordingly, he filed a petition seeking "an allowance out of the fund" to cover "his expenses and services."  *Id.*

A special master recommended that Vose be granted an award from the fund.  First, the master recommended that Vose receive an award for "necessary expenditures," including what amounted to attorneys' fees and litigation expenses.  *Id.* at 530 ("fees of solicitors and counsel," "costs of court," "sundry small incidental items for copying records and the like," "sundry fees paid in maintaining other suits in New York," fees paid in appealing to the Supreme Court, "attorneys'

fees for resisting fraudulent coupons," and "expenses paid to attorneys and agents to investigate fraudulent grants of the trust lands"). Second, and separately, the master "reported in favor of an allowance to Vose for his personal services and expenditures"—in particular, "an allowance of $2,500 a year for ten years of personal services" and reimbursement for Vose's "personal expenditures" for "railroad fares and hotel bills." *Id.*

The lower court approved the master's recommendations in the main, "allowing generally the fees of the officers of the court, and those of the attorneys and solicitors employed in the cause, including charges as between attorney and client," as well as "sundry expenses for looking after and reclaiming the trust lands." *Id.* at 531. The court also approved an award "for the personal expenses and services of Vose." *Id.* The court disallowed, however, "certain fees paid to advisory counsel and other items not directly connected with the suit." *Id.*

On appeal, the Supreme Court approved of some of the payments to Vose but disapproved of others. It held that it was proper for the lower court to reimburse Vose for "his reasonable costs, counsel fees, charges, and expenses incurred in the fair prosecution of the suit, and in reclaiming and rescuing the trust fund." *Id.* at 537. The Court explained that Vose had sued on "behalf of the other bondholders having an equal interest in the fund," who "ha[d] come in and participated in the benefits resulting from his proceedings." *Id.* at 532. "There is

20

no doubt," the Court said, that Vose "expended a large amount of money for which no allowance has been made" and that he gave "his time for years almost exclusively to the pursuit" of the action. *Id.* If Vose wasn't compensated out of the fund for these expenses, the Court explained, the other bondholders would be unjustly enriched. *See id.*

Importantly for our analysis of modern-day incentive awards, however, the Court went on to hold that "there [was] one class of allowances" that was "decidedly objectionable"—namely, "those made for [Vose's] personal services and private expenses." *Id.* at 537. The Court explained that "[t]he reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust"—*i.e.*, those that it approved—"do not apply to his personal services and private expenses." *Id.* The Court reasoned that while there might be reasons to award *trustees* "for their personal services"—*e.g.*, "to secure greater activity and diligence in the performance of the trust, and to induce persons of reliable character and business capacity to accept the office of trustee"—such "considerations have no application to the case of a creditor seeking his rights in a judicial proceeding." *Id.* at 537–38. In the case of a creditor, like Vose, "the allowance of a salary for [his] time and . . . [his] private expenses" in carrying on litigation "would present too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interest of

21

creditors." *Id.* at 538. The Court thus concluded that "[s]uch an allowance has neither reason nor authority for its support." *Id.*

To sum up, then, the Supreme Court in *Greenough* upheld Vose's award of attorneys' fees and litigation expenses but rejected as without legal basis the award for his "personal services and private expenses"—in particular, the yearly salary and reimbursement for the money he spent on railroad fares and hotel bills.

*Pettus* came just three years later. In some respects, *Pettus* broke new ground. We have described *Pettus*, for instance, as "the first Supreme Court case recognizing that attorneys"—as distinct from the lead plaintiff—"had a claim to fees payable out of a common fund which has been created through their efforts," and noted that, in *Pettus*, "a fee was awarded based upon a percentage of the fund recovered for the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). But as relevant to our analysis of incentive awards, *Pettus* is significant principally as a reiteration of the dichotomy drawn in *Greenough*: While a class representative's claim for "the expenses incurred in carrying on the suit and reclaiming the property subject to the trust" is proper, his "claim to be compensated, out of the fund or property recovered, for his personal services and private expenses" is "unsupported by reason or authority." *Pettus*, 113 U.S. at 122.

22

**2**

We take the rule of *Greenough*, confirmed by *Pettus*, to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses.  It seems to us that the modern-day incentive award for a class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services."  *See, e.g.*, *Chieftain Royalty Co. v. Enervest Energy Institutional Fund XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017) ("[C]ourts regularly give incentive awards to compensate named plaintiffs for the work they performed—their time and effort invested in the case."); *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (similar); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 333 n.65 (3d Cir. 2011) (similar).

If anything, we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough*.  Incentive awards are intended not only to compensate class representatives for their time (*i.e.*, as a salary), but also to promote litigation by providing a prize to be won (*i.e.*, as a bounty).  As our sister circuits have described them—even while giving them general approval—incentive awards are designed "to induce [a class representative] to participate in the suit," *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of*

23

*reh'g* (May 22, 1992), and "to make up for financial or reputational risk undertaken in bringing the action" and "to recognize [a class representative's] willingness to act as a private attorney general," *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). *See also, e.g.*, *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (explaining that "applications for incentive awards are scrutinized carefully by courts who sensibly fear that incentive awards may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain").[8]

The incentive award that Johnson seeks, it seems to us, is part salary and party bounty. Class counsel's fee petition asserted that Johnson was entitled to the $6,000 incentive payment because he "took critical steps to protect the interests of the class, and spent considerable time pursuing their claims"—*e.g.*, by "frequently communicat[ing] with his counsel," "ke[eping] himself apprised of th[e] matter," "approving drafts before filing," and "respond[ing] to NPAS Solutions' discovery

---

[8] So far as we can tell, the only circuit to have directly confronted whether *Greenough* and *Pettus* prohibit incentive awards summarily dismissed the cases as "inapposite" because they presented a different "factual setting[]." *Melito v. Experian Mktg. Sols., Inc.*, 923 F.3d 85, 96 (2d Cir.), *cert. denied sub nom. Bowes v. Melito*, 140 S. Ct. 677 (2019). We are unpersuaded by the Second Circuit's position. Other circuits have recognized the continuing vitality of *Greenough* as prohibiting awards for "private" and "personal" expenses in common-fund cases, although they haven't applied the decisions specifically to incentive awards. *See, e.g.*, *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1208 (6th Cir. 1992) (explaining that costs awarded to the shareholders' representative in derivative litigation "related to advancing the litigation" and were "not 'private' in the sense found objectionable in *Greenough*"); *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d at 571 (citing *Greenough* for the proposition that expenses other than attorneys' fees can be awarded out of a common fund, "provided they are not personal").

requests."  In other words, he wants to be compensated for the time he spent litigating the case, or his "personal services"—an award that the Supreme Court has deemed "decidedly objectionable."  *Greenough*, 105 U.S. at 537.  In his brief to us, Johnson also suggests that he is requesting a bonus for bringing the suit, inasmuch as he has "subjected himself to scrutiny from NPAS Solutions, class members, and the public at large," "successfully brought a class action that provides meaningful cash benefits to thousands of persons," and "provided an important public service by enforcing consumer protection laws."  Br. of Appellee Johnson at 48.  Whether Johnson's incentive award constitutes a salary, a bounty, or both, we think it clear that Supreme Court precedent prohibits it.[9]

---

[9] We note, in addition, that our holding that *Greenough* and *Pettus* prohibit incentive awards accords with our precedent carefully scrutinizing settlements that give class representatives preferred treatment.  We have explained that, "by choosing to bring their action as a class action . . .  named plaintiffs 'disclaim[] any right to a preferred position in the settlement.'" *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981) (quotation omitted); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (holding that all decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent).  We can't see why paying an incentive award isn't tantamount to giving a "preferred position" to a class representative "simply by reason of his status." *Kincade*, 635 F.2d at 506 n.5.  Other circuits have likewise viewed the preferential treatment of some class members with skepticism. *See, e.g.*, *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (holding that "the district court abused its discretion in finding that the settlement was fair, reasonable, and adequate" because "the named plaintiffs receive 'preferential treatment,' while the relief provided to the unnamed class members [was] 'perfunctory'" (quotation omitted)); *Staton v. Boeing Co.*, 327 F.3d 938, 976 (9th Cir. 2003) ("Such special rewards for counsel's individual clients are not permissible when the case is pursued as a class action.  Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" (alterations in original) (quotation omitted)).

25

**3**

To *Greenough* and *Pettus*, Johnson offers two responses.  As an initial matter, he argues that those decisions aren't binding here because neither "discusses incentive awards to class representatives, as both pre-date Rule 23 by decades."  Br. of Appellee Johnson at 47.  Two problems.  First, Johnson fails to engage with the logic of *Greenough*, which, while not directed to class representatives per se, involved an analogous litigation actor—*i.e.*, a "creditor seeking his rights in a judicial proceeding" on behalf of both himself and other similarly situated bondholders.  105 U.S. at 538.  Second, Johnson's argument implies that Rule 23 has something to say about incentive awards, and thus has some bearing on the continuing vitality of *Greenough* and *Pettus*.  But it doesn't— and so it doesn't: "Rule 23 does not currently make, and has never made, any reference to incentive awards, service awards, or case contribution awards." Rubenstein, *supra*, § 17:4.[10]  The fact that Rule 23 post-dates *Greenough* and *Pettus*, therefore, is irrelevant.

---

[10] For example, Rule 23(h) states, in relevant part, that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  One could argue that this suggests that, by implication, that items other than "attorney's fees and nontaxable costs" can't be awarded.  *Cf. Fla. Right to Life, Inc. v. Lamar*, 273 F.3d 1318, 1327 (11th Cir. 2001) (explaining that under "the interpretive canon of *expressio unius est exclusio alterius* . . . the expression of one thing implies the exclusion of another" (quotation omitted)).

26

Separately, Johnson appeals to ubiquity. "[I]ncentive awards are routine in class actions," he contends, so *Greenough* and *Pettus* can't possibly prohibit them. Br. of Appellee Johnson at 47. Johnson is partly right; incentive awards do seem to be "fairly typical in class action cases." *Berry*, 807 F.3d at 613 (quotation omitted). But, so far as we can tell, that state of affairs is a product of inertia and inattention, not adherence to law. The uncomfortable fact is that "[t]he judiciary has created these awards out of whole cloth," and "few courts have paused to consider the legal authority for incentive awards." Rubenstein, *supra*, § 17:4; *see also In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) ("[T]o the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design.").[11] Needless to say, we are not at liberty to sanction a device or practice, however widespread, that is foreclosed by Supreme Court precedent. *Cf. Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("Our decisions remain binding precedent until we see fit to reconsider them, regardless

---

[11] It is perhaps unsurprising that inertia has taken over, because challenges to incentive awards are so few and far between. And understandably so. Because "most class suits settle, the parties typically agree to pay the class representatives some incentive award," and "[t]he only adversarial challenge to this would come from objectors." Rubenstein, *supra*, § 17:4. "Absent class members," for their part, are "unlikely to object to such awards because even if they were successful, the money would simply remain in the common fund to be distributed to the class and the single member's share of it would be negligible." *Id.* Consider that redistribution of Johnson's $6,000 among all 9,543 claimants would increase each person's take by only $.63. Needless to say, this set of circumstances has "created few occasions in which courts have been required to consider seriously the legal basis" for incentive awards. *Id.*

of whether subsequent cases have raised doubts about their continuing vitality."

(quotation omitted)).[12]

* * *

In conclusion, we hold that *Greenough* and *Pettus* prohibit the type of

incentive award that the district court approved here—one that compensates a class

representative for his time and rewards him for bringing a lawsuit.  Although it's

true that such awards are commonplace in modern class-action litigation, that

doesn't make them lawful, and it doesn't free us to ignore Supreme Court

precedent forbidding them.  If the Supreme Court wants to overrule *Greenough*

---

[12] We note that the Supreme Court recently alluded to incentive awards in footnoted dicta.  In *China Agritech, Inc. v. Resh*, the Court addressed the question whether, following denial of class certification, a putative class member could commence a new class action "beyond the time allowed by the applicable statute of limitations."  138 S. Ct. 1800, 1804 (2018).  The Court held that while the limitations period is tolled "during the pendency of a putative class action" such that an unnamed class member can file an *individual* suit following a denial of class certification, he may not file "a follow-on class action past expiration of the statute of limitations."  *Id.*  In the course of its opinion, the Court observed that, as a practical matter, would-be lead plaintiffs have "little reason to wait in the wings, giving another plaintiff first shot at representation," noting (among other things) the "attendant financial benefit" of being the lead dog.  *Id.* at 1810–11.  To the "attendant financial benefit" language, the Court appended a footnote citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998), in which the Seventh Circuit had "affirm[ed] [a] class representative's $25,000 incentive award."  *China Agritech*, 138 S. Ct. at 1811 n.7.  While Supreme Court dicta are not "to be lightly cast aside" and can be "of considerable persuasive value," *F.E.B. Corp. v. United States*, 818 F.3d 681, 690 n.10 (11th Cir. 2016) (quotations omitted), *China Agritech* doesn't impact our holding or analysis here, for two reasons.  First, it is clear in context that the Court there was simply acknowledging a reality of modern class-action practice in response to policy arguments that the parties had put before it, rather than endorsing the legality of incentive awards.  *See China Agritech*, 138 S. Ct. at 1810–11.  Second, and even more importantly, the Court didn't cite or consider—let alone overrule—*Greenough* and *Pettus*.  The Supreme Court has told us that it "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*," *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000), and so we, as a lower court, remain bound to apply *Greenough* and *Pettus*.

28

and *Pettus*, that's its prerogative.  Likewise, if either the Rules Committee or Congress doesn't like the result we've reached, they are free to amend Rule 23 or to provide for incentive awards by statute.  But as matters stand now, we find ourselves constrained to reverse the district court's approval of Johnson's $6,000 award.[13]

## C

Finally, we consider Dickenson's argument that the district court didn't sufficiently explain itself to enable meaningful appellate review.  In particular, she contends that the district court failed to adequately explain (1) its award of attorneys' fees, (2) its denial of her objections, and (3) its approval of the settlement.  As we will explain, we agree.

## 1

First, the district court's approval of the attorneys'-fee award.  Federal Rule of Civil Procedure 23(h)(3) states that when awarding "reasonable attorney's fees

---

[13] Rather than contesting our reading of *Greenough* and *Pettus*, our dissenting colleague asserts that we have "disregard[ed]" *Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983), which she says is "binding in our Circuit."  Dissenting Op. at 37–38.  *Holmes* is binding, to be sure, but only with respect to the issue that it addressed and decided.  *Holmes* had nothing to do with incentive awards; instead, the question there was whether an apparent inequity in the distribution of a settlement fund—half to eight named plaintiffs, half to the remaining 118 class members—rendered the settlement itself unfair.  *See* 706 F.2d at 1147–50.  And the answer to that question didn't turn on whether any of the named plaintiffs were entitled to a salary or bounty, but rather on whether (as the settlement proponents contended and the objectors denied) the "disparities in money payments were justified by the value of the unique, individual claims of the named plaintiffs."  *Id*. at 1148.  Unsurprisingly to us, the *Holmes* panel never even mentioned—let alone saw a need to explain away or distinguish—either *Greenough* or *Pettus*.

and nontaxable costs," the court "must find the facts and state its legal conclusions under Rule 52(a)." *See also* Fed. R. Civ. P. 52(a)(1) (requiring that a court "must find the facts specially and state its conclusions of law separately").  Although "a district court has ample discretion in awarding fees," its order "must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation."  *In re Home Depot Inc.*, 931 F.3d 1065, 1088–89 (11th Cir. 2019); *see also Camden I*, 946 F.2d at 775 ("The district court's reasoning should identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees.").  "In other words, the court must 'provide a concise but clear explanation of its reasons for the fee award.'"  *Home Depot*, 931 F.3d at 1089 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (explaining that even in "a matter that is committed to the sound discretion of a trial judge . . . [i]t is essential that the judge provide a reasonably specific explanation for all aspects" of its determination because otherwise "adequate appellate review is not feasible").

The district court here didn't make the required findings or conclusions.  In its final order, the district court didn't explain its approval of the attorneys'-fee award, the litigation costs, or the incentive payment; instead, it merely said that class counsel's request with respect to each was "approved."  Under these

circumstances, the appropriate disposition is to remand for additional findings on the fees and costs issues.  *See, e.g.*, *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1309 (11th Cir. 2020) ("Rule 52 violations require us to vacate and remand for new findings and conclusions because '[w]e are . . . a court of review, not a court of first view.'" (alterations in original) (quoting *Callahan v. U.S. Dep't of Health & Human Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019)); *Complaint of Ithaca Corp.*, 582 F.2d 3, 4 (5th Cir. 1978) ("When, because of absence of findings of fact or conclusions of law, an appellate court cannot determine whether the record supports the trial court decision, it should remand the action for entry of findings of fact and conclusions of law.").[14]

## 2

Second, the district court's denial of Dickenson's objections.  When a class member objects to a settlement, "the trial judge must assume additional

---

[14] We briefly address—and reject—Dickenson's argument that the district court's fee award is unlawful because the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), overruled *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which instructs courts to calculate a common-fund award as a percentage of the fund using a 12-factor test.  As we recently explained, *Perdue* didn't abrogate *Camden I*.  *See Home Depot*, 931 F.3d at 1084–85 (stating that "[t]here is no question that the Supreme Court precedents stretching from *Hensley* to *Perdue* are specific to fee-shifting statutes" and that "Supreme Court precedent requiring the use of the lodestar method in statutory fee-shifting cases does not apply to common-fund cases").  *Camden I* therefore remains good law, and the district court should apply it in the first instance on remand.  *Cf. Piambino v. Bailey*, 610 F.2d 1306, 1329 (5th Cir. 1980) (explaining that it "is not our normal practice" to "independently evaluate the reasonableness of" attorneys' fees because "the District Court is infinitely better situated to conduct the factual inquiry necessary").

responsibilities"—most notably, to "examine the settlement in light of the objections raised and set forth on the record a reasoned response to the objections including findings of fact and conclusions of law necessary to support the response." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *see also Home Depot*, 931 F.3d at 1089 (explaining that "[t]he level of specificity required by district courts is proportional to the specificity of the fee opponent's objections").

Here, the district court gave no "reasoned response" whatsoever to Dickenson's objections in its final order, instead stating simply that "[t]he objection of Jenna Dickenson is OVERRULED." True, at the fairness hearing, the district court summarized Dickenson's objections and stated that it had "carefully considered" them, but it proceeded to dismiss them without further explanation. Nothing else in the record gives any indication that the district court meaningfully considered or responded to Dickenson's objections. Because the district court didn't "set forth on the record a reasoned response to [Dickenson's] objections" and provide "findings of fact and conclusions of law necessary to support [its] response," we conclude that a remand is necessary so that the district court can do so. *Cotton*, 559 F.2d at 1331.

**3**

Third, the district court's approval of the settlement. Before approving a class-action settlement, a district court must "determine that it [is] fair, adequate,

32

reasonable, and not the product of collusion." *Leverso*, 18 F.3d at 1530.  In so doing, "[a] threshold requirement is that the trial judge undertake an analysis of the facts and the law relevant to the proposed compromise." *Cotton*, 559 F.2d at 1330. "A 'mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice." *Id.* (quoting *Protective Comm. v. Anderson*, 390 U.S. 414, 434 (1968)).  We have also recognized that a district court must "support [its] conclusions by memorandum opinion or otherwise in the record" because appellate courts "must have a basis for judging the exercise of the trial judge's discretion." *Id.*; *see also Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983) ("Appellate courts 'must have a basis for judging the exercise of the district judge's discretion.'" (quoting *Cotton*, 559 F.2d at 1330)).

The district court's final order approving the settlement agreement falls far short of what our precedents require.  There, the court recited the factors that we identified in *Leverso v. SouthTrust Bank of Alabama*, 18 F.3d 1527 (11th Cir. 1994), and then, without any accompanying analysis, conclusorily asserted that the settlement "is in all respects fundamentally fair, reasonable, adequate, and in the

best interest of the class members, when considering" the factors "in their totality." Dist. Ct. Order at 4.[15]

While there may be cases in which we can look past the district court's lack of reasoning to conduct our own review, *see, e.g.*, *Friends of the Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012), this isn't one of them. From the record before us, we can't tell whether the district court abused its discretion. "[W]ere we at this juncture to affirm the approval of the settlement[], we would not be reviewing the district court's exercise of discretion but, rather, exercising our own discretion on the basis of the record before us." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 218 (5th Cir. 1981). We must therefore remand to the district court for a fuller explanation. *See id.* at 206–07 (stating that "we are, under these circumstances, compelled to remand to the district court for findings of fact sufficient for us to determine whether its approval of the settlements was a proper exercise of discretion").[16]

---

[15] The district court's order preliminarily approving the settlement provided no additional analysis and, in fact, recited the same conclusory statement. Nor does the fairness-hearing transcript enlighten us as to the district court's reasoning. There, the court simply recounted the case's procedural history and summarized the settlement and Dickenson's objections to it, heard argument from the parties, concluded that it had "carefully considered all of the submissions before the Court," and announced that it was "going to enter the proposed final order and judgment that has been proposed by the Plaintiff and Defense."

[16] Even if we were to conclude that the record was sufficient for us to review the district court's approval of the settlement, we would still be obliged to remand. Federal Rule of Civil Procedure 23(e)(2)(C) requires district courts to consider "the terms of any proposed award of attorney's fees" in determining whether "the relief provided for the class is adequate." Accordingly, it

* * *

As with the district court's approval of Johnson's incentive award, it is no answer to say, "That's just how it's done."  The law is what the law is, and the law requires more than a rubber-stamp signoff.  We must conclude, therefore, that the district court failed to adequately explain its award of attorneys' fees, its denial of Dickenson's objections, or its approval of the settlement.  Accordingly, we vacate the district court's order and remand so that the court can make the required on-the-record findings and conclusions.

## III

In sum, we hold that the district court violated Rule 23(h) by setting the deadline for class members to object to the settlement—including its attorneys'-fees provisions—before the due date for class counsel's fee petition, but we conclude that, on the record here, that error was harmless.  We reverse the district court's approval of Johnson's $6,000 incentive award, as it is prohibited by the Supreme Court's decisions in *Greenough* and *Pettus*.  Finally, we conclude that we must remand the case so that the district court can adequately explain its fee award

---

seems to us that the district court will in any event have to re-do its adequacy-of-the-settlement analysis after it explains its attorneys'-fees decision.

to class counsel, its denial of Dickenson's objections, and its approval of the settlement.

**REVERSED IN PART, VACATED IN PART, AND REMANDED.**

MARTIN, Circuit Judge, concurring in part and dissenting in part:

This is Jenna Dickenson's appeal of the District Court order approving, over her objections, the settlement agreement of this class action brought under the Telephone Consumer Protection Act. Ms. Dickenson also objected to the District Court's award of attorneys' fees and the incentive award to named plaintiff Charles Johnson. Those awards are challenged in this appeal as well.

I write separately because I disagree with the majority's decision to take away the incentive award approved by the District Court for the named plaintiff. See Maj. Op. at 23–25. In reversing this incentive award, the majority takes a step that no other court has taken to do away with the incentive for people to bring class actions. For class actions, the class must be represented by a named plaintiff, who incurs costs serving in that role. Those costs may include time and money spent, along with all the slings and arrows that accompany present day litigation. By prohibiting named plaintiffs from receiving incentive awards, the majority opinion will have the practical effect of requiring named plaintiffs to incur costs well beyond any benefits they receive from their role in leading the class. As a result, I expect potential plaintiffs will be less willing to take on the role of class representative in the future.

The majority's analysis also disregards the analysis set forth in this Court's ruling in Holmes v. Continental Can Co., 706 F.2d 1144 (11th Cir. 1983), which is

binding in our Circuit. I understand Holmes to have required our panel to determine whether the incentive award to Mr. Johnson is fair. That is, we were charged with deciding whether the award creates a conflict between Mr. Johnson and other class members like Ms. Dickenson. I respectfully dissent from the majority's failure to conduct this analysis.

## I.

My review of class action treatises makes clear that incentive awards (also referred to as service awards or case contribution awards) are routine. As the majority seems to observe, courts have not generally addressed their legal basis for approving incentive awards. See William B. Rubenstein, 5 Newberg on Class Actions §§ 17:2 & n.1, 17.4 (5th ed., June 2020 Update) [hereinafter Newberg]. But a review of the history of incentive awards provides worthwhile background for our discussion here. In the 1980s and 1990s, courts began to approve awards for named plaintiffs and to develop tests to determine the appropriate conditions for granting an award. See Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L. Rev. 1303, 1310–11 (2006) [hereinafter Incentive Awards]. In discussing the first case to use the term "incentive award," Newberg says "although labeling the payment an 'incentive award,' the rationale that the court employs speaks more to compensation than incentive, suggesting that the class representatives are being

paid for their service to the class, not so as to ensure that class members will step forward in the future." § 17:2 (discussing Re Cont'l/Midlantic S'holders Lit., Civ. A. No. 86-6872, 1987 WL 16678 (E.D. Pa. Sept. 1, 1987) (unreported)).

This viewpoint sparked debate. "Even as incentive awards were achieving recognition, however, the pendulum had begun to swing against them." Incentive Awards, 53 UCLA L. Rev. at 1311. The arguments centered around whether incentive awards create a conflict between the named plaintiff's interests and those of the class members she is representing. See id. at 1312–13; see also Newberg § 17:1. Courts across the country discuss the reasons for and against incentive awards, but few have "paused to consider the legal authority for incentive awards."[1] Newberg § 17:4. Rule 23 does not make (and has never made) any

---

[1] Newberg posits two possible bases for incentive awards. First, in common fund cases, "restitution supports a fee award" because "the presence of a fund under the court's supervision serves as both the source of the award and, in a sense, as the source of authority for an award." Newberg § 17:4 (emphasis omitted); see also Incentive Awards, 53 UCLA L. Rev. at 1313 ("From a doctrinal perspective, incentive awards have been justified as a form of restitution for a benefit conferred on others."). The theory is that "if the class representative provides a service to the class without the class paying for it, the class members will be unjustly enriched by virtue of receiving these services for free, and/or the class representatives are not realizing the full value of their services." Newberg § 17:4.

But the restitution analogy doesn't fit squarely within the unjust enrichment doctrine because a person who does not seek services does not generate any entitlement to payment. Id. Rather, the traditional attorneys' fee award in common fund cases can be viewed as an "exception" to the traditional unjust enrichment rule, which is "typically justified by the fact that class counsel are providing professional (legal) services to the class." Id. In other words, a person providing professional services should be compensated so that the person receiving services is not unjustly enriched. Yet even this possible basis for incentive awards does not typically apply to a named plaintiff, because the class representative generally is not providing professional services. See id. ("If you dive into a lake and save a drowning person, you are entitled to no fee." (quotation marks omitted)).

reference to incentive awards.  See id.  Indeed, Newberg recognizes that, as of June 2020, no court has addressed its authority to approve incentive awards head on.  Id. Instead, courts have "created these awards out of whole cloth."  Id.  The few scattered references in reported case law "suggest that courts generally treat incentive awards as somewhat analogous to attorney's fee awards."  Id.  In effect, courts have treated class representatives as providing professional services to the class, despite a named plaintiff not engaging in traditional—i.e., legal—services. See id. (explaining there is an exception to the unjust enrichment rule that provides a legal basis for incentive awards).  Courts gradually expanded the application of this rule in common fund cases like this one.

Around the 1990s, courts "tended to limit incentive awards to cases where the representative plaintiff had provided special services to the class—for example, providing financial or logistical support to the litigation or acting as an expert consultant."  Incentive Awards, 53 UCLA L. Rev. at 1310.  For instance, the Seventh Circuit upheld the District Court's rejection of a proposed $10,000 award to a named plaintiff "for his admittedly modest services."  Matter of Cont'l Ill. Sec. Litig., 962 F.2d 566, 571–72 (7th Cir. 1992), as amended on denial of reh'g (May 22, 1992).

But over time, circuits began to endorse the sort of incentive awards we see today.  Courts recognized that incentive awards serve the purposes of Rule 23 even

in circumstances in which the plaintiff did not provide special services. The principal inquiry became not whether there is any legal basis for an incentive award, but whether such an award is fair.

## II.

Many other circuits, including this one, look to the fairness of an award to a named class representative. If it does not appear that an incentive award "compromise[s] the interest of the class" for the class representative's personal gain, courts routinely uphold them. See Hadix v. Johnson, 322 F.3d 895, 897 (6th Cir. 2003); see id. at 898 (holding that "this case is clearly not a case where an incentive award is proper"). This Court has approved of this analysis. In Holmes v. Continental Can Co., 706 F.2d 1144 (11th Cir. 1983), we recognized that courts routinely "refuse[] to approve settlements on the ground that a disparity in benefits" between the named plaintiffs and the absent members of the class "evidenced either substantive unfairness or inadequate representation." Id. at 1148. Therefore, "[w]hen a settlement explicitly provides for preferential treatment for the named plaintiffs in a class action, a substantial burden falls upon the proponents of the settlement to demonstrate and document its fairness." Id. at 1147; see id. at 1146–1147 (explaining that eight named plaintiffs were not entitled to receive approximately one-half of the common fund based on their meritorious individual claims). The "inference of unfairness" associated with such unequal

41

distributions "may be rebutted by a factual showing that the higher allocations to certain parties are rationally based on legitimate considerations." Id. at 1148.

Our approach tracks the case law of our sister circuits. For example, the Ninth Circuit requires district courts to "individually" evaluate the award to each named plaintiff, "using relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." See Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003) (alterations adopted and quotation marks omitted). In In re U.S. Bancorp Litigation, 291 F.3d 1035 (8th Cir. 2002), the Eighth Circuit relied on similar factors to approve as fair $2,000 payments to five named plaintiffs out of a class potentially numbering more than 4 million in a settlement of $3 million. Id. at 1038 (citing, inter alia, Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Several other circuits have also recognized the proper inquiry as being whether the incentive award is fair. See, e.g., Chieftain Royalty Co. v. Enervest Energy Inst. Fund XIII-A, L.P., 888 F.3d 455, 468–69 (10th Cir. 2017) (rejecting percentage-based incentive award because, among other things, it encouraged a class representative to favor monetary remedy over injunctive relief, "creating a potential conflict between the interest of the class representative and the class"); Berry v. Schulman, 807 F.3d 600, 613–14 (4th Cir. 2015) (rejecting objector's

42

argument that incentive award created a conflict of interest and upholding award);

Cobell v. Salazar, 679 F.3d 909, 922 (D.C. Cir. 2012) (holding that incentive

award was fair and did not create "an impermissible conflict" because the

settlement agreement "provided no guarantee" that class representatives would

receive incentive payments; agreement left it to discretion of the district court);

Sullivan v. DB Invs., Inc., 667 F.3d 273, 333 n. 65 (3d Cir. 2011) (holding that

district court did not abuse its discretion in approving incentive award because it

"discussed the role played by the several class representatives and the risks taken

by these parties in prosecuting this matter").

This fairness-to-ensure-no-conflict analysis goes to the heart of Ms.

Dickenson's stated concerns, and its application would dispel her fear of collusion

here.  See Br. of Appellant at 53 ("Johnson . . . did nothing to dispel the

presumption of unfairness.").  Our court adopted this analysis in Holmes.  And it

addresses the concerns about incentive awards raised by at least one member of the

Supreme Court.  In Frank v. Gaos, 586 U.S. ___, 139 S. Ct. 1041 (2019), a

majority of the Supreme Court acknowledged that a proposed settlement award

included incentive payments for the named plaintiffs, and did not question the

viability of those incentive awards.[2]  Id. at 1045.  The majority of the Court

---

[2] One year earlier, the Supreme Court similarly recognized the viability of a "financial benefit" to a class representative that goes "above and beyond her individual claim."  China Agritech, Inc. v. Resh, 138 S. Ct. 1800, 1810–11 & n.7 (2018).  The majority calls this dicta, Maj. Op. at 28

43

remanded the case to the Ninth Circuit for that court to decide standing. Id. at 1046. Again, the majority did not address the merits of the settlement award. Id. Justice Thomas dissented, however, and in doing so, took issue with the cy pres payments to non-party nonprofits on behalf of the class as well as the incentive awards to the named plaintiffs. Justice Thomas noted that the cy pres-only arrangement did not obtain any relief for the class, while securing "significant benefits" for class counsel and the named plaintiff. Id. at 1047 (Thomas, J., dissenting). Justice Thomas said this "strongly suggests that the interests of the class were not adequately represented." Id. I read Justice Thomas's brief dissent in Frank to address his concern about whether the cy pres arrangement in that case was fair, as opposed to whether disparate awards in class actions are legally permissible as a general matter. I continue to have confidence that the fairness analysis developed by many circuit courts, including our own, can protect against conflicts between a class representative and absent class members.

Based on this Court's precedent in Holmes, and in keeping with the approach taken by other circuits, I believe it was the job of our panel to determine, in light of the totality of the circumstances, whether the District Court abused its discretion in finding the $6,000 award to Mr. Johnson was fair in this case. See

---

n.12, but it cannot seriously dispute that the Supreme Court acknowledged that a class representative may be entitled to compensation in his or her role as the person bringing suit.

Holmes, 706 F.2d at 1147; Hadix, 322 F.3d at 897–98.  And I do not believe the District Court abused its discretion in finding that the $6,000 award was fair.

The settlement agreement here was not contingent on Mr. Johnson receiving an incentive award.  It merely allowed him to seek one.  If the District Court had denied Mr. Johnson an incentive award, the class still would have had the benefit of his representation under the terms of the settlement fund set out in the agreement.  I think this arrangement mitigates any concern that the settlement was unfair to the class.  Cf. Holmes, 706 F.2d at 1146–47 (scrutinizing a settlement agreement that required, rather than merely allowed, the court to approve disparate treatment of class members); In re Dry Max Pampers Litig., 724 F.3d 713, 722 (6th Cir. 2013) (reversing a settlement approval where the settlement required $1,000 payments to named plaintiffs).  The record also contains class counsel's affidavit attesting to the fact that Mr. Johnson invested his own time and effort in litigating the action, including by regularly conferring with his counsel and responding to the defendant's written discovery requests.  Thus there was a factual basis for the District Court's decision to give Mr. Johnson an incentive award.  Under the fairness analysis, I would uphold the District Court's ruling.

### III.

Now back to the majority's holding.  The majority opinion observes that Trustees v. Greenough, 105 U.S. 527 (1881), and Central Railroad & Banking Co.

v. Pettus, 113 U.S. 116 (1885), "seem to have been largely overlooked in modern class-action practice." Maj. Op. at 18. It holds that the "modern-day incentive award" is equivalent to a salary and is barred by Greenough and Pettus. Id. at 23, 25. At the same time, the majority opinion recognizes that no other court has directly confronted the issue here: whether Greenough and Pettus prohibit awards like the $6,000 awarded to Mr. Johnson in this case. See id. at 24 n.8.

I believe the majority's decision goes one step too far in deciding this issue and does so in the face of our binding precedent that recognizes a monetary award to a named plaintiff is not categorically improper. See Holmes, 706 F.2d at 1147 (setting standards for what an appropriate award looks like). True, Holmes mentioned that the proposed preferential treatment was based on the named plaintiffs' meritorious individual claims, id., but the analysis itself matters. This approach from Holmes has been adopted by several other circuits and applied to awards that look to me more like salaries than awards for litigation expenses. Indeed, one legal basis for an incentive award is the services performed by a named plaintiff, which may include "their time and effort invested in the case." Chieftain Royalty, 888 F.3d at 468. And that is the basis on which Mr. Johnson sought compensation here. I don't think the majority opinion does enough to directly grapple with why it is not sufficient for us, like other circuits, to determine whether there is evidence of a conflict between Mr. Johnson and class members

46

like Ms. Dickenson.[3]  See Maj. Op. at 8, 33 (citing Holmes for the abuse of

discretion standard); see also id. at 29 n.13 (acknowledging that Holmes, which

answered the question of whether there was "an apparent inequity" between named

plaintiffs and the remaining class members in the distribution of a settlement fund,

"is binding").  I would not reverse the award to Mr. Johnson based on Greenough

and Pettus.  Because the $6,000 award to Mr. Johnson seems to provide "for

preferential treatment" for a named plaintiff, I believe our Circuit precedent binds

us to determine whether Mr. Johnson has demonstrated the settlement agreement is

fair.  See Holmes, 706 F.2d at 1147.  I think he has.

*    *    *

The majority's decision to do away with incentive awards for class

representatives in class actions takes our court out of the mainstream.  To date,

none of our sister circuit courts have imposed a rule prohibiting incentive awards.

Indeed, none has even directly addressed its authority to approve incentive awards.

But upon deciding to undertake this issue here, the majority skips any analysis

about our modern authority to approve these awards.  It goes straight to decisions

from the 1880s that do not reflect the current views of the Supreme Court or other

---

[3] The majority opinion calls the $6,000 awarded to Mr. Johnson "part salary and part bounty." Maj. Op. at 24.  The majority expresses concerns about a bounty compromising the interests of the class, see id. at 24–25, but it fails to take any step to alleviate those concerns.  It bears repeating that Holmes's fairness analysis would eliminate any apprehension that the incentive award created a conflict between Mr. Johnson's interests and the interests of the absent class members.

47

circuits.  The majority never properly addresses the main issue before us: whether the incentive award created a conflict between Mr. Johnson and absent class members.  I would answer this question by engaging in the fairness analysis called for by our precedent.  And that analysis leads me to say the District Court did not abuse its discretion in approving an award of $6,000 to Mr. Johnson.

I respectfully dissent.